**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PRAIRIE CITY BAKERY, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No.** |
| | ) | |
| **OLE MEXICAN FOODS, INC.,** | ) | |
| | ) | **JURY DEMAND** |
| **Defendant.** | ) | |

## COMPLAINT FOR BREACH OF CONTRACT AND BREACH OF WARRANTIES

Plaintiff Prairie City Bakery, Inc., by its attorneys, Schoenberg, Finkel, Newman & Rosenberg, LLC, as its Complaint against Defendant Ole Mexican Foods, Inc., alleges and states as follows:

## COUNT I

### (BREACH OF CONTRACT)

### A.      PARTIES

1.      Plaintiff Prairie City Bakery, Inc. ("Prairie City") is an Illinois corporation having its principal place of business in Vernon Hills, Illinois.

2.       Defendant Ole Mexican Foods, Inc. ("Ole") is a Georgia corporation having its principal place of business in Norcross, Georgia.

### B.      JURISDICTION AND VENUE

3.      Jurisdiction is proper as there is diversity of citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332.

4.      Venue is proper in this District as a substantial part of the events giving rise to the claims herein occurred in this District. 28 U.S.C § 1391.

### C.     THE PARTIES' RELATIONSHIP

5.     At all relevant times, Prairie City has been engaged in the business of selling and distributing baked goods.

6.      At all relevant times, Ole has been engaged in the business of manufacturing and selling baked goods.

7.     In or about January 2015, Prairie City and Ole attempted to negotiate an agreement pursuant to which Ole would produce Prairie City products.  Prairie City and Ole agreed upon most of the material terms of the agreement, but Ole insisted upon payment upon placement of orders. On or about January 28, 2015, Prairie City informed Ole that the requirement of payment upfront, as well as several other stipulations, were not acceptable and that Prairie City would seek another supplier

8.     In or about July, 2015, Prairie City and 7-Eleven, Inc. ("7-Eleven") began negotiations for Prairie City to sell and deliver certain baked products, including Conchas, Danes Cuernos and Mantecadas, to 7-Eleven convenience stores nationwide.

9.     In order to fulfill 7-Eleven's needs as well as Prairie City's needs for products sold under its own Dulce Pradera label, Prairie City offered Ole the opportunity to fill the 7-Eleven orders on behalf of Prairie City. On or about October 26, 2015, Prairie City and Ole, through its subdivision Bak E-Z ("Bak E-Z"), agreed to the material terms of an agreement except for final pricing. Ole agreed that Ole would manufacture, package label and deliver the goods F.O.B. in accordance with Prairie City's and/or 7-Eleven's specifications in strict conformity with applicable standards set by the United States Food and Drug Administration (the "FDA"), the United States Department of Agriculture, and all other applicable state and local governmental agencies.

10.     On or about February 16, 2016, Ole, through Bak E-Z, delivered samples of products to 7-Eleven on Prairie City's behalf. On or about June 3, 2016, Ole began shipping products on behalf of Prairie City for a 72-day test market for 7-Eleven.

11.     On July 6, 2016, Prairie City and Ole agreed upon the final pricing for products sold under Prairie City's own Dulce Pradera label.   On or about October 14, 2016, Prairie City placed its first purchase order with Ole for its own products sold under its own Dulce Pradera label.

12.     On or about September 14, 2016, Prairie City and 7-Eleven entered into a contract, effective November 1, 2016, pursuant to which Prairie City agreed to supply 7-Eleven stores nationwide with baked products, including Conchas, Danes Cuernos and Mantecadas, for a term of at least 24 months.

13.      In or about November 2016, Prairie City and Ole agreed upon the prices and terms under which Ole would manufacture, process, package and deliver the products to Prairie City for the 7-Eleven stores pursuant to the contract between 7-Eleven and Prairie City. Among other things, Ole agreed that:

(a)     it would manufacture, process, package and deliver the products in strict conformance with Prairie City's and 7-Eleven's specifications;

(b)     it would manufacture, process, and package the products in strict conformity with applicable standards of the FDA, the United States Department of Agriculture, and all other applicable state and local governmental agencies;

(c)     the products would not be misbranded in any way;

(d)     all products would be fit for human consumption;

(e)     all products would be of the type, quality, quantity, variety and grade consistent with good industry practices;

(f)     all products would be merchantable, of good quality, and free from any defects;

(g)     all products would be fit for their intended purpose, including maintaining a minimum shelf-life after delivery of 9 months while frozen and 21 days after being thawed;

(h)     it would deliver the products in quantities ordered by 7-Eleven at the times and locations designated by 7-Eleven;

(i)     payment by Prairie City would be due within 15 days of delivery for the first three months of shipments and within 30 days of shipment thereafter;

(j)     payments by Prairie City for any quantity of products would not constitute approval or acceptance of such products.

(k)     If any quantity of products was defective or did not conform to samples, descriptions, or specifications, Prairie City could, at its option, reject all of such quantity, accept all of such quantity, or accept any commercial unit or units of such quantity and reject the rest;

(l)     Ole would reimburse Prairie City in full for the quantity of products rejected and returned, and Ole would assume all costs of transportation and handling both ways for such rejected products;

(m)     Ole would expressly warrant that: (a) all of the products that Ole manufactured, processed, and packaged for Prairie City (i) would be manufactured, processed, and packaged in strict conformity with applicable sanitation standards set forth in United States Food and Drug Administration, the United States Department of Agriculture, and the state and local governmental agency having jurisdiction over the manufacturing, processing, and packaging of the products, and all applicable rules and regulations, as amended, (ii) would conform strictly to all specifications, and (iii) would be fit and wholesome for human consumption and would meet all requirements of applicable statutes, rules, and regulations of the United States and any state or local government;

4

and (b) each delivery would be, as of the date of such delivery, not short in weight or adulterated or misbranded within the meaning of the Federal Food Drug and Cosmetic Act, as amended, the Federal Air Packaging and Labeling Act of 1966, as amended, or any other food or drug law or regulation of any state or local government, and would comply with all other applicable laws and regulations of which Ole had knowledge, whether independently or by specific directive from Prairie City; and

(n)     Ole would indemnify and hold harmless Prairie City and its customers: (a) from and against any and all claims, demands, actions, suits, causes of action, damages, and expenses (including, but not limited to, expenses of investigation, settlement, litigation, and attorneys' fees incurred in connection therewith) that any person or entity would make, sustain, or bring against Prairie City or any of its customers for the recovery of damages for the injury, illness, or death of any person caused or alleged to be caused by the consumption or use by such person of any of the products that Ole shipped or delivered in breach of Ole's warranties; (b) from and against all losses, claims, damages, and expenses (including, but not limited to, expenses of investigation, settlement, litigation, and attorneys' fees incurred in connection therewith) from recalls by governmental authorities, or by Prairie City in reasonable anticipation of a governmental recall, of any of the products that Ole shipped or delivered; and (3) from and against other losses, claims, damages, actions, and expenses (including, but not limited to, expenses of investigation, settlement, litigation, or attorneys' fees incurred in connection therewith) to which Prairie City might become subject by reason of any breach by Ole of any of its warranties.

14.     On January 3, 2017, Ole, through its subdivision Bak E-Z, began delivery to Prairie City of the products necessary for performance of Prairie City's obligations under its contract with 7-Eleven for the Los Angeles market.  The nationwide launch for all 7-Eleven stores was initially

scheduled to begin on February 27, 2017, but was moved back to May 1, 2017 and ultimately cancelled due to multiple, significant quality issues, as described below.

## D. DEFENDANTS' BREACHES

15.     From January through March 23, 2017, Ole repeatedly breached the agreement with Prairie City by, inter alia: (a) delivering burnt products; (b) delivering misbranded, mislabeled and miscoded products; (c) delivering products which were not of merchantable quality and not free from defects; (d) delivering products which did not have the minimum shelf-life but which became moldy within days after delivery; (e) failing to fulfill product and volume commitments; and (f) improperly packaging and sealing the products.

16.     On or about January 12, 2017, Ole had Concha products delivered for 7-Eleven stores in Los Angeles, California, which products were burnt and had to be discarded.

17.     On or about January 25, 2017, 7-Eleven informed Prairie City that the Mantecadas and Dane Cuernos products delivered to the 7-Eleven Los Angeles market lacked the proper moisture and had inconsistent shapes and sizes.

18.     Ole repeatedly delivered products which were improperly labeled and packaged, including but not limited to:

(a)     On or about January 10, 2017, Ole delivered Concha products which had been improperly coded on the labels. As a result, Prairie City had to check all products delivered, and discovered that many of the packages had UPC symbols which had been cut off or could not be read because of poor quality control by Ole.

(b)     On or about February 7, 2017, 7-Eleven and Prairie City became aware that the calorie count and ingredient list on packages of Mantecadas were incorrect. As a result, the labels on the product had to be revised to disclose the correct information;

(c)     On or about February 16, 2017, 7-Eleven discovered that products delivered to Atlanta, Georgia had master case lot codes which were different from the codes contained within the case or on individual products;

(d)     On February 22, 2017, 7-Eleven discovered that half of the Concha samples delivered to their corporate office had incomplete and/or open seals on the packaging;

(e)     On or about February 28, 2017, 7-Eleven received a complaint from the field that the packaging on the Dane Cuerno and Concha products were too large for the products; and

(f)     On March 21, 2017, during an inspection at a distribution center for the Los Angeles area, Prairie City discovered numerous open seals on the Dane Cuerno product.

19.      Ole repeatedly delivered products which did not have the required minimum shelf life and, therefore, molded quickly, including but not limited to:

(a)     On or about February 7, 2017, Prairie City received 16 complaints from the Los Angeles area 7-Eleven stores regarding the Dane Cuernos product which molded within 12 days;

(b)     On or about February 14, 2017, Prairie City received a complaint from a Rialto, California 7-Eleven store regarding the Mantecada product which molded within 16 days;

(c)     On or about March 7, 2017, Prairie City received a verbal complaint from 7-Eleven regarding a quality assurance sample of Dane Cuerno product which molded within 19 days;

(d)     On or about March 14, 2017, Prairie City received complaints from a 7-Eleven store in Mission Viejo, California regarding the Dane Cuerno product which molded within 12 days; and

(e)     On or about March 22, 2017, 7-Eleven stores in Van Nuys, California complained of a Dane Cuerno product which molded within 18 days.

20.     7-Eleven and Prairie City attempted to work with Ole to determine the cause of the numerous problems, as well as possible solutions.  During an inspection of Ole's facility on or about February 24, 2017, 7-Eleven discovered that the packaging for Mantecadas contained an improper allergen statement, as milk was not listed as an ingredient on the packaging. As a result, Prairie City and Bak E-Z had to issue an FDA recall for all Mantecada products at 7-Eleven stores and Prairie City's distribution centers.

21.     In or about April, 2017, Prairie City had Ole's products tested. Under a controlled environment, 30% of the Cuernos products tested molded within 10 days

22.     In breach of the agreement with Prairie City, Ole failed to:

(a)     manufacture, process, package and deliver the products in strict conformance with Prairie City's and 7-Eleven's specifications;

(b)     manufacture, process, and package to products in strict conformity with applicable standards of the FDA, the United States Department of Agriculture, and all applicable state or local governmental agencies;

(c)     properly brand and code the products;

(d)     deliver products fit for human consumption;

(e)     deliver products of the type, quality, quantity, variety and grade consistent with good industry practices;

(f)     deliver products of merchantable, of good quality, and free from any defects;

(g)     deliver products fit for their intended purpose, including maintaining a minimum shelf-life of 9 months after delivery; and

(h)     deliver the products in quantities ordered by 7-Eleven at the times and locations designated by 7-Eleven.

### E.     PRAIRIE CITY'S DAMAGES

23.     Due to the numerous breaches by Ole, 7-Eleven lost all confidence in Prairie City. On March 23, 2017, 7-Eleven informed Prairie City that 7-Eleven was discontinuing the sale of all Prairie City products due to the numerous instances of mislabeled and miscoded products, improper packaging, incorrect listing of ingredients, missed deadlines, products which molded and did not have the required shelf-life, and products which were not merchantable, of good quality, and free from any defects. As a result, 7-Eleven immediately terminated the contract with Prairie City and instructed Prairie City to remove all products from 7-Eleven warehouses.

24.     Prairie City immediately informed Ole, but Ole refused to accept responsibility for, or the costs associated with, any of the discontinued products.

25.     In addition, Ole immediately ceased production and delivery of all of Prairie City's products under its own Dulce Pradera label, leaving Prairie City without any supplier.

26.     As a result of the numerous breaches by Ole, Prairie City incurred costs for storage, recall, shipping and the destruction of the Ole products, as well as other costs, which total $386,805.

27.     But for the numerous breaches by Ole, Prairie City would have earned an annual profit of $327,318 on product sales to 7-Eleven.

28.     In addition, as a result of the numerous breaches by Ole, Prairie City has suffered consequential and incidental damages including, but not limited to, the loss of its reputation and good will, as well as the profits from its Dulce Pradera line of products.

29.     Prairie City duly performed all conditions and obligations on its part under its contract with Ole.

WHEREFORE, Plaintiff Prairie City Bakery, Inc. prays for the entry of judgment against Defendants Ole Mexican Foods, Inc. in an amount in excess of $2 million, and for such other and further or different relief as this Court deems just, including awarding Prairie City its attorneys' fees and costs of suit.

## COUNT II

### (BREACH OF WARRANTY OF MERCHANTABILITY)

1-29.    Prairie City adopts and re-alleges paragraphs 1 through 29 of Count I of this Complaint as paragraphs 1 through 29 of this Count II.

30.    Section 2-314 of the Illinois Uniform Commercial Code provides:

 "Implied Warranty; Merchantability; Usage of Trade. (1) Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this Section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as

(a) pass without objection in the trade under the contract description; and
(b) in the case of fungible goods, are of fair average quality within the description; and
(c) are fit for the ordinary purposes for which such goods are used; and
(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
(e) are adequately contained, packaged, and labeled as the agreement may require; and
(f) conform to the promises or affirmations of fact made on the container or label if any.

(3) Unless excluded or modified (Section 2-316) other implied warranties may arise from course of dealing or usage of trade"

810 ILCS 5/2-314.

31.    Ole was a merchant with respect to the goods sold to Prairie City.

32.    The parties never excluded or modified the implied warranty of merchantability.

33.    Ole breached the implied warranty of merchantability by delivering goods which:

(a)     did not pass without objection in the trade under the contract description;

(b)     were not of fair average quality within the description;

(c)     were not fit for the ordinary purposes for which such goods are used;

(d)     did not run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;

(e)     were not adequately contained, packaged, and labeled as the agreement required;

(f)     failed to conform to the affirmations of fact made on the labels.

34.     As a result of the numerous breaches of the warranty of merchantability by Ole, Prairie City incurred costs for storage, recall, shipping and destruction of the Ole products, as well as other costs, which total $386,805.

35.     But for the numerous breaches of the warranty of merchantability by Ole, Prairie City would have earned an annual profit of $327,318 on product sales to 7-Eleven.

36.     In addition, as a result of the numerous breaches of the warranty of merchantability by Ole, Prairie City has suffered consequential and incidental damages including, but not limited to, the loss of its reputation and good will, as well as the profits from its Dulce Pradera line of products.

WHEREFORE, Plaintiff Prairie City Bakery, Inc. prays for entry of judgment against Defendants Ole Mexican Foods, Inc. in an amount in excess of $2 million, and for such other and further or different relief as this Court deems just, including awarding Prairie City its attorneys' fees and costs of suit.

## COUNT III

### (BREACH OF WARRANTY OF FITNESS FOR INTENDED PURPOSE)

1-36.    Prairie City adopts and re-alleges paragraphs 1 through 36 of Count II of this Complaint as paragraphs 1 through 36 of this Count III.

37.    Section 2-315 of the Illinois Uniform Commercial Code provides:

"Implied Warranty: Fitness for Particular Purpose. Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

810 ILCS 5/2-314.

38.    Ole knew that the products which Prairie City was purchasing had a particular purpose for which the goods were required and that Prairie City was relying on Ole's skill or judgment to select or furnish suitable goods, in that:

(a)    Ole knew that Prairie City was relying upon Ole's skill or judgment to fulfill Prairie City's obligations under its agreement with 7-Eleven;

(b)    Ole knew that the Conchas, Danes Cuernos and Mantecadas would be sold at 7-Eleven convenience stores nationwide and that such products would require a minimum shelf-life of 21 days after being thawed;

(c)    Ole knew that the products as manufactured, processed, labelled, packaged and delivered had to comply with all requirements of the FDA and all other governmental agencies; and

(d)    Ole selected the ingredients, recipes, processes, labeling and packaging for all of the products.

39. The parties never excluded or modified the implied warranty of fitness for particular purpose.

40. Ole breached the implied warranty of fitness for particular purpose by delivering goods which did not conform to the intended purpose of the products.

41. As a result of the numerous breaches of the warranty of fitness for particular purpose by Ole, Prairie City incurred costs for storage, recall, shipping and destruction of the Ole products, as well as other costs, which total $386,805.

42. But for the numerous breaches of the warranty of fitness for particular purpose by Ole, Prairie City would have earned an annual profit of $327,318 on product sales to 7-Eleven.

43. In addition, as a result of the numerous breaches of the warranty of fitness for particular purpose by Ole, Prairie City has suffered consequential and incidental damages including, but not limited to, the loss of its reputation and good will, as well as the profits from its Dulce Pradera line of products.

WHEREFORE, Plaintiff Prairie City Bakery, Inc. prays for the entry of judgment against Defendants Ole Mexican Foods, Inc. in an amount in excess of $2 million, and for such other and further or different relief as this Court deems just, including awarding Prairie City its attorneys' fees and costs of suit.

## COUNT IV

### (BREACH OF EXPRESS WARRANTY)

1-43. Prairie City adopts and re-alleges paragraphs 1 through 43 of Count III of this Complaint as paragraphs 1 through 41 of this Count IV.

44.     In or about 2016, Prairie City and Ole negotiated and agreed upon an express warranty pursuant to which Ole would deliver all products to Prairie City. The agreed upon warranty provided:

"OLE warrants and represents that: (a) All of the Products that OLE manufactures, processes, and packages under this Agreement (i) shall be manufactured, processed, and packaged strictly in conformity with applicable sanitation standards set forth in United States Food and Drug Administration, the United States Department of Agriculture, and the State and Local Governmental Agency having jurisdiction over the manufacturing, processing, and packaging of the Products, and all applicable rules and regulations, as amended, (ii) shall conform strictly to Specifications, and (iii) shall be fit and wholesome for human consumption and shall meet all requirements of applicable statutes, rules, and regulations of the United States and any state or local government. (b) Each delivery under this Agreement shall be, as of the date of such delivery, not short in weight, or adulterated or misbranded within the meaning of the Federal Food Drug and Cosmetic Act, as amended, the Federal air Packaging and Labeling Act of 1966, as amended, or any other food or drug law or regulation of any state or local government and shall comply with all other applicable laws and regulations of which OLE has knowledge, whether independently or by specific directive from CUSTOMER. Each delivery under this Agreement shall be a product that, under the provisions of such federal, state, and local laws, may be lawfully shipped and sold in interstate commerce and conforms in all respects to the requirements of such laws and the rules and regulations issued pursuant to such laws. If CUSTOMER claims a breach of this provision, CUSTOMER may return the subject Products to OLE and OLE shall assume all cost of transportation and handling both ways and reimburse CUSTOMER for any such costs paid by CUSTOMER. (c) All equipment and procedures that OLE uses in the manufacture of the Products do not and will not infringe any valid United States, foreign, or other letters patent, trademark, copyright, or other proprietary right of any person not a party to this Agreement. (d) All materials, ingredients, supplies, and packaging materials that OLE uses in the manufacture of the Products shall be merchantable, of good quality, free from defects, and fit for the purpose intended."

45.     In breach of this express warranty, Ole failed to:

(a)     manufacture, process, package and deliver the products in strict conformance with Prairie City's and 7-Eleven's specifications;

(b)     manufacture, process, and package the products in strict conformity with applicable standards of the FDA, the United States Department of Agriculture, and all applicable state or local governmental agencies;

(c)    properly brand and code the products;

(d)    deliver products fit for human consumption;

(e)    deliver products of the type, quality, quantity, variety and grade consistent with good industry practices;

(f)    deliver products of merchantable, of good quality, and free from any defects; and

(g)    deliver products fit for their intended purpose, including maintaining a minimum shelf-life of 9 months after delivery.

46.    As a result of the numerous breaches of the express warranty by Ole, Prairie City incurred costs for storage, recall, shipping and destruction of the Ole products, as well as other costs, which total $386,805.

47.    But for the numerous breaches of the express warranty by Ole, Prairie City would have earned an annual profit of $327,318 on product sales to 7-Eleven.

48.    In addition, as a result of the numerous breaches of the express warranty by Ole, Prairie City has suffered consequential and incidental damages including, but not limited to, the loss of its reputation and good will, as well as the profits from its Dulce Pradera line of products.

WHEREFORE, Plaintiff Prairie City Bakery, Inc. prays for the entry of judgment against Defendants Ole Mexican Foods, Inc. in an amount in excess of $2 million, and for such other and further or different relief as this Court deems just, including awarding Prairie City its attorneys' fees and costs of suit.

**SCHOENBERG FINKEL
NEWMAN & ROSENBERG, LLC**


**By:**  s/ Norman T. Finkel
         One of the Attorneys for Plaintiff
         Prairie City Bakery, Inc.

Norman T. Finkel
William R. Klein
**SCHOENBERG FINKEL NEWMAN & ROSENBERG, LLC**
222 S. Riverside Plaza, Suite 2100
Chicago, IL  60606
(312)  648-2300